CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
August 21, 2026
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

SERGIO ADRIAN CERON QUIROZ, )
Plaintiff, )
)
v. )
)
STATE EXPRESS, INC., )
) Civ. Act. No.: 5:26-cv-00098-EKD-JCH
and )
)
MICHAL'S QUALITY TRANSPORTATION, INC.)
)
and )
)
JOHN DOE (a pseudonym), )
Defendants. )

## FIRST AMENDED CIVIL COMPLAINT

NOW COMES the Plaintiff, by and through his counsel, and moves the Court for judgment against the Defendants, singularly and jointly & severally, in the amount and for the reasons set forth below:

1. Plaintiff Sergio Adrian Ceron Quiroz is an adult individual who is a citizen and domiciliary of the State of North Carolina and who resides at 2302 Macarthur Lane, Hudson, NC 28638; and

2. Defendant State Express, Inc. is, upon information and belief, a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois, and is therefore a citizen of the State of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1). State Express, Inc. is not registered to do business in the Commonwealth of Virginia, and its registered agent in Illinois is Indre Marciukaitis, 10800 Route 83, Lemont, IL 60439-4700; and

3. At all relevant times, USDOT#: 2447112 was issued to Defendant State Express, Inc. by the U.S. Department of Transportation (USDOT); and

4. Defendant Michal's Quality Transportation, Inc. ("Defendant MQT") is, upon information and belief, a corporation organized under the laws of the State of Illinois with its principal place of business at 310 N. Hammes Avenue, Suite 302A, Joliet, Illinois 60435, and is therefore a citizen of the State of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1). Defendant MQT

is not registered to do business in the Commonwealth of Virginia, and its registered agent in Illinois is Darius Marciukaitis, 310 N. Hammes Avenue, Suite 302A, Joliet, Illinois 60435-8188; and

5. At all relevant times, USDOT#: 1350650 was issued to Defendant MQT by the U.S. Department of Transportation (USDOT); and

6. Defendant John Doe is a pseudonym for the driver of the tractor-trailer combination that was involved in the motor vehicle collision described herein, whose identity is presently unknown despite reasonable efforts but is reasonably anticipated to be ascertained during discovery; and

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that this is a civil action between citizens of different states—Plaintiff being a citizen of North Carolina, and Defendants State Express, Inc. and MQT each being citizens of Illinois—and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00; and

8. This action was originally filed in the Circuit Court of Rockingham County, Virginia (Case No. CL26001961-00), and was removed to this Court by Defendant State Express, Inc. pursuant to 28 U.S.C. §§ 1441 and 1446 on or about July 28, 2026. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of Rockingham County, Virginia, from which this action was removed, lies within the Harrisonburg Division of this Court; and

9. Although this Court's jurisdiction is founded on diversity of citizenship, the substantive law of the Commonwealth of Virginia governs Plaintiff's claims, as the motor vehicle collision giving rise to this action occurred in Rockingham County, Virginia. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); and

10. On Monday, November 5, 2024, at approximately 10:10 PM, Plaintiff was operating a tractor-trailer in the scope and course of his employment on I-81 North in a northeasterly direction in the right-hand lane of the two lanes for north-bound traffic in Rockingham County, Commonwealth of Virginia, in or near the City of Harrisonburg; and

11. At approximately the same time, Defendant John Doe was operating a tractor-trailer combination, the trailer of which was bearing markings of Defendant State Express, Inc., on I-81 North in a northerly direction in the left-hand lane of the two lanes for north-bound traffic in Rockingham County, Commonwealth of Virginia, in or near the City of Harrisonburg; and

12. At all relevant times, the tractor of the aforementioned tractor-trailer combination described in Paragraph 10 bore USDOT#: 1350650, and the trailer of the

aforementioned tractor-trailer combination described in Paragraph 10 bore USDOT#: 2447112; or

13. In the alternative to the allegations in the immediately preceding paragraph, at all relevant times, BOTH the tractor AND the trailer of the aforementioned tractor-trailer combination described in Paragraph 10 bore USDOT#: 2447112; or

14. In the alternative to the allegations in the immediately preceding two (2) paragraphs, at all relevant times, BOTH the tractor AND the trailer of the aforementioned tractor-trailer combination described in Paragraph 10 bore USDOT#: 1350650; or

15. In the alternative to the allegations in the immediately preceding three (3) paragraphs, at all relevant times, the tractor of the aforementioned tractor-trailer combination described in Paragraph 10 bore USDOT#: 2447112, and the trailer of the aforementioned tractor-trailer combination described in Paragraph 10 bore USDOT#: 1350650; and

16. Upon information and belief, Defendant State Express, Inc. utilized a "drop hook" practice whereby independent trucking companies, including Defendant MQT, were permitted by Defendant State Express, Inc. to connect their tractors to trailers owned by Defendant State Express, Inc. and to transport those trailers over the public highways of the Commonwealth of Virginia and elsewhere; or

17. In the alternative to the allegations in the immediately preceding paragraph, upon information and belief, Defendant State Express, Inc. utilized a "drop hook" practice whereby independent trucking companies, including Defendant MQT, were affirmatively engaged and directed by Defendant State Express, Inc. to connect their tractors to trailers owned by Defendant State Express, Inc. and to transport those trailers over the public highways of the Commonwealth of Virginia and elsewhere; or

18. In the alternative to the allegations in the immediately preceding two (2) paragraphs, upon information and belief, Defendant State Express, Inc. utilized a "drop hook" practice whereby independent trucking companies, including Defendant MQT, were permitted or engaged by Defendant State Express, Inc. to connect their tractors to trailers operated by, but not owned by, Defendant State Express, Inc., and to transport those trailers over the public highways of the Commonwealth of Virginia and elsewhere; and

19. Upon information and belief, at the time of the collision described herein, the tractor-trailer combination described herein consisted of a tractor owned by Defendant MQT coupled to a trailer owned by Defendant State Express, Inc.; or

20. In the alternative to the allegations in the immediately preceding paragraph, upon information and belief, at the time of the collision described herein, the tractor-

trailer combination described herein consisted of a tractor operated by, but not owned by, Defendant MQT coupled to a trailer owned by Defendant State Express, Inc.; or

21. In the alternative to the allegations in the immediately preceding two (2) paragraphs, upon information and belief, at the time of the collision described herein, the tractor-trailer combination described herein consisted of a tractor owned by Defendant MQT coupled to a trailer operated by, but not owned by, Defendant State Express, Inc.; or

22. In the alternative to the allegations in the immediately preceding three (3) paragraphs, upon information and belief, at the time of the collision described herein, the tractor-trailer combination described herein consisted of a tractor operated by, but not owned by, Defendant MQT coupled to a trailer operated by, but not owned by, Defendant State Express, Inc.; and

23. Upon information and belief, Defendant State Express, Inc. utilized a "drop hook" practice whereby independent trucking companies, including Defendant MQT, were permitted and/or engaged to connect their tractors to trailers owned and/or operated by Defendant State Express, Inc. and to transport those trailers over the public highways of the Commonwealth of Virginia and elsewhere; and

24. Upon information and belief, at the time of the collision described herein, the tractor-trailer combination described herein consisted of a tractor owned and/or operated by Defendant MQT coupled to a trailer owned and/or operated by Defendant State Express, Inc.; and

25. Upon information and belief, at the time of the collision described herein, Defendant John Doe had connected the tractor that he was operating to the trailer bearing Defendant State Express, Inc.'s markings and was operating that tractor-trailer combination northbound on I-81 in Rockingham County, Virginia, as herein described; and

26. At all relevant times, Defendant John Doe was operating the tractor-trailer combination described herein in the scope and course of his employment or agency for Defendant State Express, Inc.; or

27. In the alternative to the allegations in the immediately preceding paragraph, at all relevant times, Defendant John Doe was operating the tractor-trailer combination described herein in the scope and course of his employment or agency for Defendant MQT; or

## COUNT I: NEGLIGENCE OF DEFENDANT JOHN DOE

28. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein; and

29. At or about 10:10 PM on Monday, November 5, 2024, Defendant John Doe overtook Plaintiff from the left-hand lane of I-81 North and executed an unsafe lane change in front of the Plaintiff into the right-hand lane; and

30. While executing the aforementioned unsafe lane change, Defendant John Doe struck the left side of Plaintiff's truck cab with the right rear side of his trailer; and

31. Defendant John Doe did not stop his tractor-trailer following the aforementioned collision, and he continued to drive in a northeasterly direction on I-81 North at a high rate of speed; and

32. Defendant John Doe was negligent in the operation of the tractor-trailer that he was operating in the following respects: (a) by failing to pay full time and attention to the operation of the tractor-trailer that he was operating; (b) by failing to yield the right of way to the Plaintiff's tractor-trailer; (c) by operating his tractor-trailer at a speed in excess of the speed that was safe given the conditions existing at the time; (d) by failing to keep a proper lookout; (e) by failing to keep his tractor-trailer under proper control; (f) by attempting to change lanes in an unsafe and imprudent manner; (g) by failing to operate his tractor-trailer in a reasonably safe and prudent manner under the conditions then and there prevailing; and (h) in other respects that may be discovered during the course of this civil action and to be proven at the trial of this matter; and

33. Defendant John Doe's negligence was the actual and proximate cause of the collision of the Plaintiff's and Defendant John Doe's tractor-trailers; and

34. As a result of the force of the collision of the Plaintiff's and Defendant John Doe's tractor-trailers, the Plaintiff was severely and permanently injured, has suffered and will in the future suffer great physical and mental pain and suffering, has incurred and will incur in the future medical and related expenses in an attempt to be cured, and has incurred other losses; and

35. Defendant John Doe's negligence was the actual and proximate cause of Plaintiff's injuries due to the aforementioned collision; and

36. Plaintiff is free of any contributory negligence as a result of the aforementioned collision; and

## COUNT II: VICARIOUS LIABILITY OF EMPLOYER OR PRINCIPAL OF DEFENDANT JOHN DOE

37. In further alternative to the allegations in Count I, Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein; and

38. At all relevant times, Defendant State Express, Inc., as the employer or principal of Defendant John Doe, is vicariously liable for the negligent acts and omissions of Defendant John Doe under the doctrine of *respondeat superior*; or

39. In the alternative to the allegations in the immediately preceding paragraph, at all relevant times, Defendant MQT, as the employer or principal of Defendant John Doe, is vicariously liable for the negligent acts and omissions of Defendant John Doe under the doctrine of respondeat superior; and

**COUNT III: NEGLIGENT ENTRUSTMENT OF DEFENDANT STATE EXPRESS, INC.**

40. In further alternative to the allegations in Counts I through II, Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein; and

41. Defendant State Express, Inc. owned the trailer described herein and, upon information and belief, entrusted that trailer to Defendant MQT for connection to a tractor and operation over the public highways of the Commonwealth of Virginia and elsewhere pursuant to the "drop hook" practice described herein; and

42. Defendant State Express, Inc. owed a duty to Plaintiff and to the motoring public to exercise reasonable care in selecting motor carriers, including Defendant MQT, to whom it entrusted its trailers for interstate transportation, and to ascertain that any such motor carrier was competent, careful, and qualified to safely operate a tractor-trailer combination upon the public highways; and

43. Upon information and belief, Defendant State Express, Inc. breached its duty of reasonable care in one or more of the following respects: (a) by failing to adequately investigate the safety record, operating authority, and insurance status of Defendant MQT prior to entrusting its trailer to Defendant MQT for use on the public highways of the Commonwealth of Virginia and elsewhere; (b) by failing to verify that Defendant MQT maintained a satisfactory safety rating and acceptable compliance history with the Federal Motor Carrier Safety Administration prior to authorizing Defendant MQT to connect its tractors to Defendant State Express, Inc.'s trailers; (c) by entrusting its trailer to Defendant MQT and/or to Defendant John Doe under circumstances where Defendant State Express, Inc. knew or reasonably should have known that Defendant MQT and/or Defendant John Doe were incompetent, careless, or otherwise unfit to safely operate a tractor-trailer combination upon the public highways; (d) by failing to enter into or enforce a written agreement with Defendant MQT that adequately addressed safety standards, driver qualification, and compliance with federal motor carrier safety regulations prior to permitting the "drop hook" exchange of trailers described herein; and (e) in other respects that may be discovered during the course of this civil action and to be proven at the trial of this matter; and

44. As a direct and proximate result of Defendant State Express, Inc.'s negligent entrustment and negligent selection of Defendant MQT as described herein, Plaintiff was severely and permanently injured, has suffered and will in the future suffer great physical and mental pain and suffering, has incurred and will incur in the future medical and related expenses in an attempt to be cured, and has incurred other losses; and

**COUNT IV: STATUTORY EMPLOYER / "LOGO" LIABILITY OF DEFENDANT STATE EXPRESS, INC. UNDER 49 C.F.R. § 376.12(c)(1)**

45. In further alternative to the allegations in Counts I through III, Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein; and

46. At all relevant times, 49 C.F.R. § 376.12(c)(1) required that any lease or interchange agreement between Defendant State Express, Inc., as an authorized motor carrier, and any lessor or interchange partner, including Defendant MQT, provide that the authorized carrier lessee "shall have exclusive possession, control, and use of the equipment for the duration of the lease" and "shall assume complete responsibility for the operation of the equipment for the duration of the lease"; and

47. At all relevant times, 49 C.F.R. § 376.11(c) required that the trailer described herein, while operating under lease, interchange, or other arrangement with Defendant State Express, Inc., display identification showing the name of the authorized carrier responsible for the equipment, and, upon information and belief, the trailer described herein bore markings and/or identification devices of Defendant State Express, Inc. for that purpose at the time of the collision described herein; and

48. Upon information and belief, the trailer described herein bore the markings, logos, and/or identification devices of Defendant State Express, Inc. at the time of the collision described herein, and Defendant State Express, Inc. furnished, authorized, permitted, and/or failed to require the removal of said markings, logos, and/or identification devices in connection with the "drop hook" practice and/or interchange arrangement between Defendant State Express, Inc. and Defendant MQT described herein; and

49. Upon information and belief, the tractor-trailer combination described herein was, at the time of the collision, hauling regulated freight for compensation in interstate commerce under the operating authority of Defendant State Express, Inc.; and

50. By reason of the display of Defendant State Express, Inc.'s markings, logos, and/or identification devices on the trailer described herein at the time of the collision, and pursuant to the federal statutory and regulatory scheme codified at

49 U.S.C. § 14102 and 49 C.F.R. § 376.12(c)(1), a rebuttable presumption arises that Defendant State Express, Inc. is the statutory employer of Defendant John Doe and had exclusive possession, control, and use of the tractor-trailer combination described herein at the time of the collision, notwithstanding any lease, interchange agreement, or other arrangement between Defendant State Express, Inc. and Defendant MQT purporting to allocate possession, control, or responsibility otherwise; and

51. Upon information and belief, Defendant State Express, Inc. failed to enter into, maintain, or enforce a written lease or interchange agreement with Defendant MQT that complied with the requirements of 49 C.F.R. § 376.12, including the requirement that such agreement specify which party was responsible for the removal of identification devices and clearly allocate exclusive possession, control, and responsibility for the equipment during the period of interchange; and

52. Defendant State Express, Inc.'s failure to comply with 49 C.F.R. §§ 376.11(c) and 376.12(c)(1) as described herein constitutes negligence per se under the laws of the Commonwealth of Virginia, in that said regulations were enacted to protect members of the motoring public, including Plaintiff, from the precise type of harm that occurred herein, and Defendant State Express, Inc.'s violation of said regulations was a direct and proximate cause of the collision and Plaintiff's resulting injuries and damages; and

53. As a direct and proximate result of Defendant State Express, Inc.'s statutory responsibility as the carrier under whose markings, identification, and/or operating authority the trailer described herein was being operated at the time of the collision, Defendant State Express, Inc. is liable to Plaintiff for the negligence of Defendant John Doe to the same extent as if Defendant John Doe were its actual employee, regardless of the ownership of the tractor or the terms of any private agreement between Defendant State Express, Inc. and Defendant MQT; and

54. As a direct and proximate result of Defendant State Express, Inc.'s statutory liability as the presumed statutory employer of Defendant John Doe as described in this Count, Plaintiff was severely and permanently injured, has suffered and will in the future suffer great physical and mental pain and suffering, has incurred and will incur in the future medical and related expenses in an attempt to be cured, and has incurred other losses; and

WHEREFORE, for the foregoing reasons, the Plaintiff moves the Court for judgment against the Defendants, singly and jointly & severally, as follows:

1. For Plaintiff Sergio Adrian Ceron Quiroz: FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), with interest thereon at the judgment rate from November 5, 2024, and for costs incurred; and

2. For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted, this the 19th day of August, 2026.

SERGIO ADRIAN CERON QUIROZ
By counsel:

J. William Snyder, Jr.

J. William Snyder, Jr. (VSB#: 47895)
THE LAW OFFICES OF WILL SNYDER, P.L.L.C.
102 West Third Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 725-1000
Fax: (336) 725-5870
E-Mail: will@willsnyderlaw.com